## Richmond

CHARLES WALTER LUND V. COMMONWEALTH OF VIRGINIA.

March 4, 1977.

Record No. 760591.

Present, All the Justices.

*John B. Spiers, Jr. (Duane E. Mink; William J. McGhee; Spiers, Spiers & Mink,* on brief), for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

I'ANSON, C.J., delivered the opinion of the court.

Defendant, Charles Walter Lund, was charged in an indictment with the theft of keys, computer cards, computer print-outs and using "without authority computer operation time and services of Computer Center Personnel at Virginia Polytechnic Institute and State University [V.P.I. or University]

... with intent to defraud, such property and services having a value of one hundred dollars or more." Code §§ 18.1-100 and 18.1-118 were referred to in the indictment as the applicable statutes. Defendant pleaded not guilty and waived trial by jury. He was found guilty of grand larceny and sentenced to two years in the State penitentiary. The sentence was suspended, and defendant was placed on probation for five years.

Defendant was a graduate student in statistics and a candidate for a Ph.D. degree at V.P.I. The preparation of his dissertation on the subject assigned to him by his faculty advisor required the use of computer operation time and services of the computer center personnel at the University. His faculty advisor neglected to arrange for defendant's use of the computer, but defendant used it without obtaining the proper authorization.

The computer used by the defendant was leased on an annual basis by V.P.I. from the IBM Corporation. The rental was paid by V.P.I. which allocates the cost of the computer center to various departments within the University by charging it to the budget of that department. This is a bookkeeping entry, and no money actually changes hands. The departments are allocated "computer credits [in dollars] back for their use [on] a proportional basis of their [budgetary] allotments." Each department manager receives a monthly statement showing the allotments used and the running balance in each account of his department.

An account is established when a duly authorized administrator or "department head" fills out a form allocating funds to a department of the University and an individual. When such form is received, the computer center assigns an account number to this allocation and provides a key to a locked post office box which is also numbered to the authorized individual and department. The account number and the post office box number are the access code which must be provided with each request before the computer will process a "deck of cards" prepared by the user and delivered to computer center personnel. The computer print-outs are usually returned to the locked post office box. When the product is too large for the box, a "check" is placed in the box, and it is used to receive the print-outs at the "computer center main window."

Defendant came under surveillance on October 12, 1974, because of complaints from various departments that

unauthorized charges were being made to one or more of their accounts. When confronted by the University's investigator, defendant initially denied that he had used the computer service, but later admitted that he had. He gave to the investigator seven keys for boxes assigned to other persons. One of these keys was secreted in his sock. He told the investigating officer he had been given the keys by another student. A large number of computer cards and print-outs were taken from defendant's apartment.

The director of the computer center testified that the unauthorized sum spent out of the accounts associated with the seven post office box keys, amounted to $5,065. He estimated that on the basis of the computer cards and print-outs obtained from the defendant, as much as $26,384.16 in unauthorized computer time had been used by the defendant. He said, however, that the value of the cards and print-outs obtained from the defendant was "whatever scrap paper is worth."

Defendant testified that he used the computer without specific authority. He stated that he knew he was a large computer user, but, because he was doing work on his doctoral dissertation, he did not consider this use excessive or that "he was doing anything wrong."

Four faculty members testified in defendant's behalf. They all agreed that computer time "probably would have been" or "would have been" assigned to defendant if properly requested. Dr. Hinkleman, who replaced defendant's first advisor, testified that the computer time was essential for the defendant to carry out his assignment. He assumed that a sufficient number of computer hours had been arranged by Lund's prior faculty advisor.

The head of the statistics department, at the time of the trial, agreed with the testimony of the faculty members that Lund would have been assigned computer time if properly requested. He also testified that the committee which recommended the awarding of degrees was aware of the charges pending against defendant when he was awarded his doctorate by the University.

The defendant contends that his conviction of grand larceny of the keys, computer cards, and computer print-outs cannot be upheld under the provisions of Code § 18.1-100 because (1) there was no evidence that the articles were stolen, or that they had a

value of $100 or more, and (2) computer time and services are not the subject of larceny under the provisions of Code §§ 18.1-100 or 18.1-118.

Code § 18.1-100 (now § 18.2-95) provides as follows:

"Any person who: (1) Commits larceny from the person of another of money or other thing of value of five dollars or more, or

(2) Commits simple larceny not from the person of another of goods and chattels of the value of one hundred dollars or more, shall be deemed guilty of grand larceny . . . . "

Section 18.1-118 (now § 18.2-178) provides as follows:

"If any person obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of larceny thereof; . . . . "

The Commonwealth concedes that the defendant could not be convicted of grand larceny of the keys and computer cards because there was no evidence that those articles were stolen and that they had a market value of $100 or more. The Commonwealth argues, however, that the evidence shows the defendant violated the provisions of § 18.1-118 when he obtained by false pretense or token, with intent to defraud, the computer print-outs which had a value of over $5,000.

■ Under the provisions of Code § 18.1-118, for one to be guilty of the crime of larceny by false pretense, he must make a false representation of an existing fact with knowledge of its falsity and, on that basis, obtain from another person money or other property which may be the subject of larceny, with the intent to defraud. *See Hubbard* v. *Commonwealth*, 201 Va. 61, 66, 109 S.E.2d 100, 104 (1959).

At common law, larceny is the taking and carrying away of the goods and chattels of another with intent to deprive the owner of the possession thereof permanently. Code § 18.1-100 defines grand larceny as a taking from the person of another money or other thing of value of five dollars or more, or the taking not from the person of another goods and chattels of the value of $100 or more. The phrase "goods and chattels" cannot be interpreted to include computer time and services in light of the

often repeated mandate that criminal statutes must be strictly construed. *See Commonwealth* v. *McCray*, 430 Pa. 130, 133, 242 A.2d 229, 230 (1968).

At common law, labor or services could not be the subject of the crime of false pretense because neither time nor services may be taken and carried away. It has been generally held that, in the absence of a clearly expressed legislative intent, labor or services could not be the subject of the statutory crime of false pretense. *McCray*, *supra*; 2 Wharton, *Criminal Law and Procedure* § 604 at 369 (Anderson ed. 1957). Some jurisdictions have amended their criminal codes specifically to make it a crime to obtain labor or services by means of false pretense. *E.g.*, New York Penal Code § 165.15; New Jersey Penal Code ch. 2A:111; and California Criminal Code § 322. We have no such provision in our statutes.

Furthermore, the unauthorized *use* of the computer is not the subject of larceny. Nowhere in Code § 18.1-100 or § 18.1-118 do we find the word "use." The language of the statutes connotes more than just the unauthorized use of the property of another. It refers to a taking and carrying away of a certain concrete article of personal property. *See People* v. *Ashworth*, 220 App. Div. 498, 222 N.Y.S. 24, 27 (1927). There it was held that the unauthorized *use* of machinery and spinning facilities of another to process wool did not constitute larceny under New York's false pretense statute.

We hold that labor and services and the unauthorized use of the University's computer cannot be construed to be subjects of larceny under the provisions of Code §§ 18.1-100 and 18.1-118.

The Commonwealth argues that even though the computer print-outs had no market value, their value can be determined by the cost of the labor and services that produced them. We do not agree.

The cost of producing the print-outs is not the proper criterion of value for the purpose here. Where there is no market value of an article that has been stolen, the better rule is that its actual value should be proved. *See* 50 Am. Jur. 2d, Larceny § 45 at 211 and § 148 at 329. *Compare, Hancock* v. *State*, 402 S.W.2d 906, 18 A.L.R.3d 1113 (Tex. Crim. App., 1966), where the prosecution was based on a statute and there was evidence of the monetary value of the computer programs.

Here the evidence shows that the print-outs had no ascertainable monetary value to the University or the computer center. Indeed, the director of the computer center stated that the print-outs had no more value than scrap paper. Nor is there any evidence of their value to the defendant, and the value to him could only be based on pure speculation and surmise. Hence, the evidence was insufficient to convict the defendant of grand larceny under either Code § 18.1-100 or § 18.1-118.

For the reasons stated, the judgment of the trial court is reversed, and the indictment is quashed.

*Reversed.*