### Richmond

ERNEST EARL EVANS and
JAMES ELMER SMITH, JR.

V.

COMMONWEALTH OF VIRGINIA

October 14, 1983.

Record No. 821755.

Present: Carrico, C.J., Cochran, Compton, Stephenson, Russell, and Thomas, JJ., and
Gordon, Retired Justice.

*David T. Petty, Jr. (Thomas L. Phillips; Kizer, Phillips & Petty*, on briefs), for appellants.

*James E. Kulp, Senior Assistant Attorney General (Gerald L. Baliles, Attorney General*, on brief), for appellee.

GORDON, R.J., delivered the opinion of the Court.

Ernest Earl Evans and James Elmer Smith, Jr., appeal convictions of petit larceny by embezzlement. The court sentenced each to a term of 30 days in jail and a fine of $1,000.[1]

Evans and Smith were employed as salesmen in the investment division of Central Fidelity Bank. They submitted their resignations in August 1981 and began employment with a competing bank at the end of the month. When they left Central Fidelity, they took with them a computer printout belonging to that Bank. This taking led to the indictments and convictions and to this appeal.

The investment division of Central Fidelity arranges purchases, sales, and exchanges of securities for the Bank's customers, primarily large institutions interested in large denominations. Compet-

---

[1] The indictments charged grand larceny which was reduced to petit larceny. The Commonwealth elected to prosecute for larceny by embezzlement under Code § 18.2-111.

ing with other banks and brokerage houses, Central Fidelity earns substantial profits from the division's operations.

Central Fidelity uses a computer to monitor accounts for which it holds securities in safekeeping. The Bank deposits data concerning these accounts and securities in an outside data bank, and it retrieves the data by computer printouts. Each printout, known as a customer security list, reflects the securities held in safekeeping, the owners' names, and the maturity dates. The system is so designed that only Central Fidelity can obtain a printout.

Customarily, Central Fidelity prints two copies of the customer security list. One copy is kept at the investment clerk's desk and one on the trader's desk in the room where the salesmen work. From the information on the list and other data, the Bank issues weekly "maturity notices" to apprise the salesmen when to solicit customers for reinvestments or other security transactions.

Smith requested an extra copy of the August 4, 1981 printout for a "special project." Two copies were delivered to him, one of which he gave to Evans. Evans took the copy home, and Smith later delivered a copy to the competing bank.

According to an officer of Central Fidelity, a customer security list would be useful for many years to come, an invaluable sales tool to produce profits. Another officer testified that if a competitor obtained the information on a list, the competitor would be given an edge in the business.

Central Fidelity brought a civil suit under Code § 18.2-500 for injury to its trade or business, resulting in a favorable decree. The indictments involved in this appeal followed.

In *Lund* v. *Commonwealth*, 217 Va. 688, 232 S.E.2d 745 (1977), this Court held that the taking of computer time and services in the form of printouts could not constitute larceny because the subject matter of larceny must be goods and chattels. Computer time and services, reasoned the Court, were not goods or chattels.

In 1978 the General Assembly enacted Code § 18.2-98.1:

Computer time or services or data processing services or information or data stored in connection therewith is hereby defined to be property which may be the subject of larceny under §§ 18.2-95 or 18.2-96, or embezzlement under § 18.2-111, or false pretenses under § 18.2-178.

Code § 18.2-111, under which Evans and Smith were prosecuted, makes a person guilty of larceny if he "wrongfully and fraudulently use, dispose of, conceal or embezzle any . . . personal property, tangible or intangible, which he shall have received . . . by virtue of his . . . employment. . . ."

The indictments charged that Evans and Smith "unlawfully and feloniously did steal computer information or data stored in connection therewith, to-wit: a customer securities list."[2] By an assignment of error, they contend that the trial court should have dismissed the indictments because Code § 18.2-98.1 "is unconstitutionally vague on its face."

Counsel argues that if "in connection therewith," appearing in Code § 18.2-98.1, is given a broad interpretation, unconstitutionality results. The statute, he says, then would (i) apply to any information or data derived from a computer "regardless of remoteness and regardless of the form of the information at the time of its appropriation," (ii) "would appear to apply to what employees exposed to computer or data processing services might remember or jot down on their own, or any print-out or work product generated by such service, regardless of the length of time any such print-out or work product had existed separate and apart from the computer or data processing unit which originally produced it," and (iii) "invite arbitrary and discriminatory enforcement by requiring law enforcement and prosecutorial officials, as well as juries, to make case by case determinations of whether certain data compilations have existed separate and apart from a computer or data processing unit for a sufficient period of time to render this section inapplicable."

Defendants lack standing on a facial attack, however, to make these challenges, which in effect charge overbreadth. "[W]hen overbreadth has only due process implications, [a defendant] has no standing to make a facial attack but only standing to challenge the statute as applied to his own conduct." *Stanley* v. *City of Norfolk*, 218 Va. 504, 508, 237 S.E.2d 799, 802 (1977).

The trial court instructed the jury that to convict it must find that the customer security list "was of some value." Code § 18.2-96 makes "simple larceny not from the person of another of

---

[2] The trial did not proceed on the theory that the defendants embezzled a piece of paper. As observed by the trial judge, "there was never any indication, any observation, any allegation that this was a case involving the theft of paper."

goods and chattels of the value of less than $200" punishable as a misdemeanor.

The Commonwealth adduced no proof, says counsel, of the value of the list. Counsel therefore concludes that the evidence does not support the giving of the instruction.

Counsel relies on *Lund* v. *Commonwealth, supra,* holding the evidence of value insufficient to convict the defendant of grand larceny. In *Lund,* we said: "Where there is no market value of an article that has been stolen, the better rule is that its actual value should be proved." 217 Va. at 692, 232 S.E.2d at 748.

The rule is quite different, however, in a case of petit larceny. The petit larceny statute, Code § 18.2-96, does not require proof of any minimum value.

"At the common law, an article to be the subject of larceny must be of some value. It is sufficient, however, it is said, if it be worth less than the smallest coin known to the law." *Wolverton* v. *Commonwealth,* 75 Va. 909, 913 (1881). Under settled Virginia law, no proof need be adduced to show that the subject of petit larceny has a specific value. *Wright* v. *Commonwealth,* 196 Va. 132, 82 S.E.2d 603 (1954); *Wolverton* v. *Commonwealth, supra.*

■ The evidence respecting the nature and use of the customer security list supplied proof that the list had value. The proof was augmented by testimony that the list was an invaluable sales tool, giving a competitor a valuable edge if the list fell into the competitor's hands.

■ Counsel argues that the intent to deprive the owner of his property is a necessary element of embezzlement. This element being lacking, he concludes the convictions must be reversed.

This Court in a recent case, however, described the elements of embezzlement:

> A person entrusted with possession of another's personalty who converts such property to his own use or benefit is guilty of the statutory offense of embezzlement. Code § 18.2-111.

*C. D. Smith* v. *Commonwealth,* 222 Va. 646, 649, 283 S.E.2d 209, 210 (1981); *cf. Revell* v. *Commonwealth,* 215 Va. 708, 213 S.E.2d 756 (1975). And Black's Law Dictionary 300 (5th ed. 1979), to which counsel referred us, gives this definition of the noun form of *to convert*:

> Unauthorized and wrongful exercise of dominion and control over another's personal property, to exclusion of or inconsistent with rights of the owner.

■ Proof was adduced that Evans and Smith converted the customer security list by exercising dominion and control inconsistent with the rights of Central Fidelity, the owner. The proof therefore justified the conviction of statutory embezzlement.

The trial consumed five days. After the jury verdict, Evans and Smith moved to dismiss the prosecution on the basis of Code § 18.2-501, which motion the court overruled.

■ Code § 18.2-501 provides that no individual shall be prosecuted for any transaction concerning which he may testify in a suit authorized by Code § 18.2-500, part of the article entitled "Conspiracy to Injure Another in Trade, Business or Profession." As mentioned, Central Fidelity had brought suit for injury to its trade or business. Evans and Smith had testified in that suit.

■ Counsel contends that Code § 18.2-501 is jurisdictional, withdrawing subject matter jurisdiction to prosecute Evans and Smith under the indictments. But the statute does not operate to withdraw subject matter jurisdiction. Rather, it affords the defense of immunity. And "[i]mmunity may of course be waived . . . by failure to invoke the immunity when prosecution is begun." 8 J. Wigmore, *Evidence* § 2282 at 520 (McNaughton rev. 1961).

■ Code § 19.2-227 forbids reversal of a conviction order upon any objection made to the indictment after a verdict, unless the indictment be so defective as to violate the Constitution. Under our Rule 3A:12(c) a defense based on defect in the institution of the prosecution must be made before a plea is entered and seven days before the day fixed for trial. Under that Rule failure to make a timely defense is deemed a waiver.

■ Failure to make a timely defense has been held a waiver. *Brooks* v. *Peyton*, 210 Va. 318, 171 S.E.2d 243 (1969) (statutory discharge from prosecution for delay in bringing to trial waived by failure to make timely objection); *Hubbard* v. *Commonwealth*, 207 Va. 673, 152 S.E.2d 250 (1967) (statutory bar to double prosecution for one illegal act waived by failure to make timely objection); *Driver* v. *Seay*, 183 Va. 273, 32 S.E.2d 87 (1944) (constitutional defense of double jeopardy waived by failure to make timely objection); *United States* v. *Abrams*, 357 F.2d 539 (2nd Cir.), *cert. denied*, 384 U.S. 1001 (1966) (claim of privilege against self-incrimination waived by failure to make timely objection).

We find no merit in the other assignments of error.

*Affirmed.*