**Linwood BERRYMAN**

v.

**L.W. MOORE, et al.**

**Civ. A. No. 85–0199–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Linwood Berryman, pro se.

Robert H. Herring, Jr., Asst. Atty. Gen., Richmond, Va., Jacqueline G. Epps, Sr. Asst. Atty. Gen., for defendants.

## ORDER

MERHIGE, District Judge.

In accordance with the accompanying memorandum, the Court orders that petitioner's petition for a writ of habeas corpus is hereby DENIED. Should petitioner desire to appeal this ruling, he may do so by filing a notice of appeal with the Clerk of the Court within 30 days of the date of entry hereof.

And it is so ORDERED.

## MEMORANDUM

On February 14, 1985, petitioner, proceeding *pro se* and *in forma pauperis*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Jurisdiction is conferred by 28 U.S.C. § 2241.

On March 12, respondent submitted a motion to dismiss alleging that the petition contained claims that had not met the exhaustion requirements imposed by § 2254(b) and that consequently the entire petition must be dismissed under the holding of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). An order was entered on July 3 granting petitioner leave to amend his petition to present only the exhausted claims. On July 16, respondents filed a motion to dismiss the amended petition; petitioner responded to the motion on August 13. Respondent's motion to dismiss is now ripe for consideration.

Petitioner's present imprisonment results from a sentence imposed in the Circuit Court of Henrico County, Virginia. Following a bench trial, petitioner was found guilty of grand larceny, Va.Code 1950 § 18.2–95, and of breaking and entering with intent to commit larceny, Va.Code 1950 § 18.2–91. On each of these counts petitioner received a sentence of ten years imprisonment with six years suspended, for a total of 20 years imprisonment of which twelve were suspended.

In his petition, petitioner alleges that the evidence presented at his trial was insufficient to sustain his conviction on either count under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### Facts

On December 16, 1983, a condominium in the Raintree Complex in Henrico County was broken into. The occupants' belongings were disturbed and some packages were opened, but at the time it did not appear that anything had been removed from the dwelling. Two weeks later, however, the owner of the condominium discovered that his high school and college class-

rings were missing. These rings, usually kept in a case on top of his dresser, were rarely worn by their owner, a dentist. At trial he testified that he had last worn them on December 3, 1983, and that he had not looked in their case between that time and the date that he discovered the rings were missing, when he reported their loss to the police.

On January 18, 1984, petitioner Linwood Berryman sold the rings to a local jeweler, presenting identification as required by law. He was paid less than $200.00 for them. Shortly after the sale, petitioner was arrested by the police. He told the arresting officer that he was a garbage man, that his work took him into the Raintree complex and that he had found the rings in a "green trashbag" while working his route. Petitioner explained that he had initially opened the bag because he had discerned the outlines of some videotapes inside and found upon opening the bag that it contained the rings as well. Petitioner did not testify at trial.

In his challenge to his convictions petitioner points to the fact that there was no physical or testimonial evidence linking him directly to the break-in. He characterizes the prosecution's case as "inferences piled upon inferences" and asserts that upon the above facts no rational trier of fact could have found him guilty of the charged offenses beyond a reasonable doubt.

The standard a federal habeas court must follow in evaluating due process challenges to the sufficiency of the evidence was outlined in *Jackson v. Virginia,* supra. The Court's duty is to inquire "... whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789. This formulation strikes a balance between preserving the role of the trier of fact as the ultimate resolver of those issues on which reasonable men could differ and ensuring that a defendant's conviction meets the due process standard of proof beyond a reasonable doubt. Employing this standard, the Court will now evaluate petitioner's three main challenges to the sufficiency of the evidence.

### Grand Larceny

Petitioner was convicted of grand larceny under Va.Code § 18.2–95 which, in pertinent part, defines grand larceny as: "simple larceny not from the person of another of goods and property of the value of $200 or more." Larceny has been defined by the Virginia Supreme Court as "the wrongful or fraudulent taking of personal goods belonging to another without his consent and with the intention to deprive the owner thereof permanently." *Skeeter v. Commonwealth,* 217 Va. 722, 232 S.E.2d 756 (1977). In his first challenge to the sufficiency of evidence, petitioner contends that the prosecution failed to prove the element of larceny. While he concedes that a break-in occurred on December 16, petitioner argues that there was not proof beyond a reasonable doubt that the rings themselves were taken at that time. He points to the almost four week interval during which the location of the rings was uncertain in that their owner merely assumed that they were in their usual place in the case on top of his dresser. Petitioner argues from this that the inference that the rings were stolen at the time of the break-in is simply too speculative to meet the reasonable doubt standard. Although these contentions have some force, the Court is forced to reject them, concluding that in the circumstances a rational trier of fact could have found beyond a reasonable doubt that the rings were stolen at the time of the break-in.

It is, of course, true that entirely circumstantial evidence forms of necessity the valid basis for the conviction of many crimes. Nor is the prosecution obliged to negate every circumstance or explanation consistent with innocence that could flow from a given set of facts. *United States v. Chappell,* 353 F.2d 83 (4th Cir.1965). The following facts supported the trial judge's inference that the rings were taken at the time of the break-in. The rings were care-

fully stored in a box on the top of the owner's dresser; evidence presented showed that they were not removed from this box or the box disturbed save on the rare occasions when they were worn by their owner. These facts make it unlikely that the rings could have been lost through carelessness or accident. Nor was the time during which they were unaccounted for before and after the break-in so long as to dispel the reasonable inference that they were taken at that time. Finally, the trial judge, disbelieving petitioner's testimony as to how he came into possession of the rings, could have made the inference that the rings had been come by illegally. Believing they had been stolen, he might also reasonably infer that the theft occurred at the time of the only known forced entry. Consideration of these factors leads the Court to conclude that a rational trier of fact could have found beyond a reasonable doubt that the rings were stolen at the time of the break-in.

Petitioner's second contention is that the evidence failed to establish that the stolen rings had a value of over $200 as is required by Va.Code § 18.2–95 and that consequently he should not have been found guilty of grand larceny. Value is an essential element of the offense of grand larceny and the Commonwealth is required to prove that the value of stolen property is at least equal to the statutory amount. *Wright v. Commonwealth,* 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954). In addressing the question of whether the Commonwealth proved the statutory element of $200.00 value, a critical question is under what standard should the value of stolen property be determined. There are a number of alternatives; original cost, value to the owner, and replacement cost can be rumbered among the possibilities. The general rule at common law, however, is that the value of stolen property for the purposes of grading the offense of larceny is determined if possible by its fair market value. *See* Am.Jur.2d Larceny, § 45 (1970).

Because it is the law of Virginia that establishes the offense of grand larceny it is to that State's law that the Court must first look in determining how its elements are to be defined. Although Virginia cases have not dealt with the subject at length there are strong indications that in Virginia also the "value of an object of larceny is the fair market value at the time and place of theft." Va.Model Jury Instructions; Criminal: Larceny & Related Offenses— Scope Note II–24, Supp. #5 (1984). Virginia cases bear this out.

In *Dunn v. Commonwealth,* 222 Va. 704, 284 S.E.2d 792 (1981) the Virginia Supreme Court reversed a conviction of grand larceny where the only evidence of the value of the stolen item, a ten-year-old television set, was its original cost. The Court stated "without a showing of the effect of age and wear and tear on the value of an item such as a typewriter, the jury might be misled to believe that original price equals current value." *Id.,* 284 S.E.2d at 795. That "current value" is equivalent to fair "market value" is demonstrated by another Virginia case, *Lund v. Commonwealth,* 217 Va. 688, 232 S.E.2d 745 (1977). Defendant had been convicted of grand larceny for stealing "computer time" as evidenced by computer printouts. In rejecting the Commonwealth's contention that the cost of the labor and services for producing the printouts showed this "value," the Court said "... the cost of producing the printouts is not the proper criterion of value for the purpose here (of establishing grand larceny) ... where there is no market value of an article that has been stolen, the better rule is that its actual value should be proved. *See* 50 Am.Jur.2d Larceny, 45 at 211." *Id.* 232 S.E.2d at 748. It is evident from the above that Virginia like other States values stolen property for the purpose of grading larceny by using "fair market value." If a market doesn't exist, where, for example, an item is unique or unsaleable, "actual value" is the standard. A common definition of fair market value, and one that the Virginia Supreme Court has employed in civil cases is: "... the price property will bring when offered for

sale by a seller who desires but is not obligated to sell and bought by a buyer under no necessity of purchasing." *Board of Supervisors of Fairfax v. Donatelli and Kline,* 228 Va. 620, 325 S.E.2d 342, 345 (1985).

■ There were three main pieces of evidence presented at trial bearing on the rings' value. Dr. Talton, the owner of the rings testified that in 1972 he had purchased his college ring for "just at or a little over $200" but was unsure as to what he had paid for his high school ring. Asked what value he himself placed on the ring, Dr. Talton replied "they are priceless, but I would say $500 or $600." He was then asked if this figure included both rings and stated "Well, I'm not sure about the worth of the high school ring, but the college ring I know $500 or $600." Dr. Talton's statements as to value were admissible under Virginia law, *see Haynes v. Glenn,* 197 Va. 746, 91 S.E.2d 433 (1956).

Mr. Cooper, owner of the jewelry store where petitioner sold the rings, testified next. He stated that he had bought the rings from petitioner, was uncertain as to just what he had paid for them, but that it was "less than $200." This transaction, in which a willing buyer paid less than $200.00 to a willing seller might be thought to be a paradigm for establishing fair market value. If, for example, Mr. Cooper had been able to testify that he paid more than $200 for the rings to petitioner, a finding by the trial judge that their fair market value exceeded $200 could not be disturbed. At the same time Mr. Cooper's testimony that he purchased the rings for under $200 does not mean that the trier of fact was bound to accept that sale as conclusive evidence of their value; he was free to consider and prefer other evidence that established a market value of over $200.

Following his testimony regarding his purchase of the rings from petitioner, Mr. Cooper testified in the following manner:

"Q. You buy 10K gold frequently, is that a fair statement?

A. Yes, sir.

Q. Basically, how do you determine the scrap value of 10K gold?

A. Well, 10K gold commercially is approximately 41% pure. It is not too difficult to compute the weight and the percentage to determine exactly what you're dealing with here.

Q. And you have testified in cross-examination that the amount you paid Mr. Berryman for these two rings was less than $200.00?

A. Yes, sir.

Q. You remember the two rings in question?

A. Yes, sir.

Q. Do you recall approximately what the weight of those two rings were?

A. Yes, sir.

Q. Can you tell us what it was?

A. I can tell you that the melt would have been in excess of $200.00.

Q. The what?

A. The melt would have been in excess of $200.00.

Q. What does that mean?

A. That means that the intrinsic gold value of these two rings would have been greater than $200.00.

Q. Is it a fair statement or not a fair statement that the scrap value of the rings is less than the actual value of the ring intacted?

A. It depends on who wants it and who has it.

Q. Say, to the owner of the item.

A. To the owner? Appreciatively more. To me it has nothing but simple gold value."

■ Taking the above evidence together, the Court must conclude that a rational trier of fact could have found that the market value of the stolen rings exceeded $200.00. The owner of the rings, Dr. Talton, testified that the purchase price of only one of the rings exceeded $200.00. While this factor might not conclusively establish value, it could certainly have giv-

en the trial judge, who saw both rings, a sufficient basis, taken with the other evidence of value, for finding that the "current value" of the rings exceeded $200.00. Mr. Cooper's testimony as to the rings' "melt value" can only strengthen the conclusion that the trial judge's exercise of fact-finding in this case was within the *Jackson* standard and cannot be disturbed. After considering all of the evidence "in the light most favorable to the prosecution" *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, this Court cannot say that no rational trier of fact could have found beyond a reasonable doubt that the element of value had been established.

### Breaking and Entering

Petitioner's contention in regard to his conviction of breaking and entering is one that if accepted would lead necessarily to a finding that he was not guilty of grand larceny. He asserts that even if it is conceded that a break-in occurred on December 16 and that rings were stolen at that time, the evidence presented at trial was simply insufficient to show that petitioner was the person who committed the break-in and performed the theft.

■ Certainly, the evidence connecting petitioner to the break-in is not overwhelming. It consists of the following. Petitioner was a garbageman; his route took him near the burglarized condominium. There was evidence showing that he was at work on that route on the day of the break-in and that he might have had the opportunity to be alone and out of the scrutiny of his co-worker on the garbage truck for periods of up to an hour. A month and two days later, petitioner was shown to have been in possession of the rings, selling them to Mr. Cooper. Finally, there is petitioner's explanation of his possession, testified to by Inspector Ross, the arresting officer, that he had found the rings in a trashbag along with video tapes sometime "around November" Tr. at 35. Aside from the above evidence, nothing was shown at trial linking petitioner with the break-in or making his participation therein more likely.

Evidence that petitioner had an opportunity to commit the break-in is, of course, relevant. At the same time, petitioner's opportunity to burglarize a condominium was one shared with so many other people as to lessen its probative value considerably. The condominium broken into was located in a populous "complex." More important is the evidence that petitioner was in possession of the stolen rings a month and two days after the break-in. It is evident that the trial judge, in finding that petitioner was involved in the theft, must have relied heavily upon the often-used inference that the possessor of recently stolen property, in the absence of an adequate explanation for his innocent possession, both knows that it is stolen and possibly participated in the theft himself.

The reasonableness of the inference of guilty knowledge, or theft, from the unexplained possession of recently stolen property has been often upheld by the Fourth Circuit. *Battaglia v. United States*, 205 F.2d 824 (1953); *United States v. Kolakowski*, 314 F.2d 699 (1963); *United States v. Long*, 538 F.2d 580 (4th Cir.1976). Nevertheless, even a reasonable inference if unsupported, will not provide a basis for proof beyond a reasonable doubt. Rather, the recent possession of stolen property should be "... viewed as probative evidence of the crime ... and reviewed along with the other evidence in the case to determine whether a rational juror could find the defendant guilty beyond a reasonable doubt." *Cosby v. Jones*, 682 F.2d 1373, 1380 (1st Cir.1982).

In the present case two possible inferences arise from the petitioner's possession of recently stolen property. The first is that his unexplained possession was at least tainted by "guilty knowledge." However, this inference does not necessarily give rise to the stronger inference that he also engineered the theft. Under Virginia law the knowing receipt of stolen goods is in itself a continuing form of larceny. Va.Code § 18.2–108. Thus silence regarding the possession of stolen property may stem as much from a desire to avoid prosecution

for larceny as from a desire to conceal one's involvement in a burglary.

The further inference of theft may, of course, be supported by other facts and circumstances. For example, the more recent the possession the more likely it is that the goods taken have not changed hands since the theft or where the items stolen are so bulky, specialized or in some other way distinct as to make it unlikely that they would or could be transferred from the original thief to another, the inference that the possessor was the one who stole them is strengthened. In the present case, the items taken, two rings, were both highly portable and disposable; within the thirty day period between their theft and petitioner's demonstrated possession of them, they could easily have changed hands. It cannot be said then that petitioner's possession of these rings more than a month after the theft, standing alone, could constitute proof beyond a reasonable doubt that he committed the break-in.

There was, however, another piece of evidence in this case which supported the trial judge's finding that petitioner was guilty of the break-in; petitioner's explanation of how he had "found" the rings in a green bag on his trash route rings honestly. The trial judge, disbelieving petitioner's story, might have found in his statement that he had found the rings in the trash while working the Raintree area, an indication that petitioner knew where the break-in occurred and was suiting his story to that fact to make his explanation for possession seem more plausible. Thus petitioner's false explanation of possession could itself have furnished evidence that he was involved in the break-in.

Stated most strongly, the case against petitioner is this; he was working nearby at the time of the break-in, a month later he is shown to be in possession of the rings; he fails to adequately explain his possession but instead gives a story that is unbelievable and suggests that he knew the location of the burglary. Based on this evidence and according deference to the trial judge as trier of fact as required by *Jackson*, the Court concludes that the evidence establishing petitioner's participation in the break-in was constitutionally sufficient. Certainly any less evidence could not have supported a conviction. The Court's function on habeas review, however, is merely to determine whether after considering all the evidence in the light most favorable to the prosecution no rational trier of fact could have arrived at the finding of guilt beyond a reasonable doubt. The court believes that standard was met in the present case and therefore petitioner's petition for writ of habeas corpus as to his conviction under Va.Code § 18.2–91 must also be DENIED. An appropriate order shall issue.

And it is so ORDERED.