Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

JEREMY DION DIMAIO

                        OPINION BY CHIEF JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 052556                    November 3, 2006

COMMONWEALTH OF VIRGINIA

                FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the Commonwealth presented sufficient evidence of value to support convictions for computer fraud in violation of Code § 18.2-152.3 and larceny in violation of Code § 18.2-111.

     Jeremy Dion DiMaio was convicted in a bench trial of computer fraud in violation of Code § 18.2-152.3; computer trespass in violation of Code § 18.2-152.4(A); embezzlement in violation of Code § 18.2-111;[1] and attempted extortion in violation of Code §§ 18.2-59 and -26.  His convictions were affirmed by the Court of Appeals in DiMaio v. Commonwealth, 46 Va. App. 755, 621 S.E.2d 696 (2005).  We awarded DiMaio an appeal limited to the issues whether the Commonwealth established the value necessary for convictions of computer fraud and larceny.

     Applying well-established principles of appellate review, we will consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the

Commonwealth, the prevailing party below.  Rose v.

Commonwealth, 270 Va. 3, 6, 613 S.E.2d 454, 455 (2005);

Correll v. Commonwealth, 269 Va. 3, 6, 607 S.E.2d 119, 120

(2005); Zimmerman v. Commonwealth, 266 Va. 384, 386, 585

S.E.2d 538, 539 (2003); Phan v. Commonwealth, 258 Va. 506,

508, 521 S.E.2d 282, 282 (1999).  When a defendant contests

the sufficiency of the evidence on appeal, this Court must

give the judgment of the circuit court sitting without a jury

the same weight as a jury verdict.  Commonwealth v. Duncan,

267 Va. 377, 384, 593 S.E.2d 210, 214 (2004); McCain v.

Commonwealth, 261 Va. 483, 492, 545 S.E.2d 541, 547 (2001);

Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763

(2001); Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d

643, 645 (1999).  Upon review of the evidence, this Court will

affirm the circuit court's judgment unless it is plainly wrong

or without evidence to support it.  Code § 8.01-680; Duncan,

267 Va. at 384, 593 S.E.2d at 214; Jackson v. Commonwealth,

267 Va. 178, 204, 590 S.E.2d 520, 535 (2004); McCain, 261 Va.

at 492-93, 545 S.E.2d at 547; Tarpley, 261 Va. at 256, 542

S.E.2d at 763; Phan, 258 Va. at 511, 521 S.E.2d at 284.

Jeremy Dion DiMaio was employed as the director of human

resources for S&M Brands, Inc., trading as Bailey's

---

[1] Pursuant to Code § 18.2-111, embezzlement referred to in
this statute is "deemed larceny."

Cigarettes.  William W. Snell served as vice-president and chief financial officer of S&M Brands.

In July 2003, S&M Brands made a loan of $6,500 to DiMaio, memorialized in a written loan agreement signed by DiMaio and Stephen Bailey, president of S&M Brands.  DiMaio agreed that repayment for the loan, both principal and interest, would be by fixed deduction from his payroll checks commencing in January 2004.

DiMaio informed S&M Brands on April 7, 2004, that he planned to resign as director of human resources effective April 23, 2004.  After DiMaio had submitted his letter of resignation, Bailey learned that DiMaio had contacted an employee in the company's payroll department and directed her to refrain from deducting loan payments from his payroll checks and that she had complied with his request.

DiMaio was required, pursuant to the terms of the loan agreement, to repay the balance due on the loan within five days from the date of resignation or termination of his employment from S&M Brands.  Bailey agreed to extend the period of repayment provided DiMaio gave S&M Brands the proceeds from his final payroll check and return a check that had been issued to DiMaio for his unused vacation time.  Even though DiMaio had agreed to this arrangement, he refused to comply.  When Bailey learned that DiMaio had failed to honor

3

this agreement, he fired DiMaio and asked him to leave the company's premises immediately.

Bailey appointed Snell to serve as the interim human resources director after DiMaio's termination. When Snell assumed the position, he discovered that certain files that had been located on the computer that S&M Brands had issued to DiMaio were missing. S&M Brands' entire human resource directory, including business forms and templates, had been removed from the computer. Approximately 829 personnel files were missing. Additionally, signed covenants not to compete that S&M Brands had executed with its employees had been physically removed from S&M Brands' premises.

Snell contacted DiMaio and inquired about the missing computer data. DiMaio responded that he had transferred the computer documents to an off-site server and that he would be "willing to provide the files to the company under the right circumstances." "[DiMaio] told me that the documents were not on the computer, and they were not on the server, which has designated password protection for confidential documents in the [human resources] area. I asked him where they were, and he told me that they were on a secure third-party server on the Internet. And that he had placed them there. I didn't have to worry because he had them in a secure location. I asked him how I was going to get a hold of them, and he said

4

that he would be willing to provide the files to the company under the right circumstances. And he expressed some interest in establishing an agreement between himself and the company that would return the files in exchange for forgiveness of the debt that he had personally with S&M Brands."

DiMaio encountered Michael Mills, S&M's information technology director, at a social event. DiMaio told Mills: "[D]on't bother looking for the files, because they're not there."

Subsequently, police officers executed a search warrant at DiMaio's home. The police officers conducted a search of DiMaio's computer and located data that DiMaio had taken from S&M Brands. The police officers also found original covenants not to compete, hidden in DiMaio's kitchen, that DiMaio had also taken from S&M Brands. The covenants not to compete were original documents that S&M Brands had executed with its employees.

Snell, who had experience in evaluating companies and properties, qualified as an expert witness, without objection, and was permitted to render opinions regarding the market value of the 829 personnel files that DiMaio had taken. He testified that the fair market value of the files exceeded $10,000. Snell also testified, over DiMaio's objection that is not the basis of an assignment of error in this appeal,

that the value of the personnel files that DiMaio took "would be tens of thousands of dollars or worse . . . that the value of the documents of the company could be much greater."

Everett W. Gee, III, "in-house counsel" for S&M Brands, testified, without objection, that the fair market value of just the computer files that DiMaio took "would run you somewhere at $3,790 . . . for a HR software package that would cover a sliver of the forms that we had."  Gee also testified, without objection, that the value of the covenants not to compete exceeded $5,000.  He explained that he had researched the jurisprudence in ten states where S&M Brands has employees and that the covenants not to compete were created to comply with the employment laws of those states.  He testified as follows:

> "The document itself, as a lawyer, I sell documents such [as] this inasmuch as I [bill] and collect it, $5,000 or $6,000 or $7,000 in time to draft a noncompete, a confidential information agreement which I have done, and over the years it has been many.
> "But if you were talking about a sale of our business, if I was a potential purchaser of S&M Brands, I would want to ensure that when I was purchasing the company in this stock sale and asset sale, that there was some reasonable and covenant protection, so if I buy S&M Brands and all of a sudden S&M Brands employees don't go, you know, to the wind, because each particular sales rep that we have, the value to the company is extremely significant, on average, a little over a $100,000 a month."

6

Gee also stated that he could receive "$5,000 to $6,000 just for the form" if he sold the form to a willing buyer.

DiMaio argues that the Commonwealth failed to establish the value of the computer records and, therefore, as a matter of law, the evidence was insufficient to support a conviction of computer fraud.[2]  We disagree.

Proof that property has some value is sufficient to sustain a conviction of petit larceny, but when the value of the items stolen determines the grade of the offense, the value must be alleged, and the Commonwealth must prove, beyond a reasonable doubt, the value satisfies the statutory requirement for felony larceny.  Robinson v. Commonwealth, 258 Va. 3, 5, 516 S.E.2d 475, 476 (1999); Parker v. Commonwealth, 254 Va. 118, 120-21, 489 S.E.2d 482, 483 (1997); Walls v. Commonwealth, 248 Va. 480, 481, 450 S.E.2d 363, 364 (1994); Knight v. Commonwealth, 225 Va. 85, 88, 300 S.E.2d 600, 601 (1983); Dunn v. Commonwealth, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981); Wright v. Commonwealth, 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954).  We have stated that "[t]he test is

_____

[2] Code § 18.2-152.3 states in relevant part:
> "Any person who uses a computer or computer network, without authority and:
> "1.  Obtains property or services by false pretenses;
> "2.  Embezzles or commits larceny; or
> "3.Converts the property of another; is guilty of the crime of computer fraud."

market value, and particularly retail value." Robinson, 258 Va. at 5, 516 S.E.2d at 476.

The Commonwealth presented sufficient evidence to establish that the value of the computer records that DiMaio took exceeded $200.00. For example, Snell testified, without objection, that the fair market value of the 829 personnel files that DiMaio took had a fair market value in excess of $10,000.[3] Gee testified, without objection, that the files had a value far in excess of $3,790.

DiMaio, relying upon a headnote appended to our decision in Lund v. Commonwealth, 217 Va. 688, 232 S.E.2d 745 (1977), argues that the Commonwealth failed to establish that the value of the computer files exceeded $200. We disagree.

Initially, we note that headnotes are not authoritative statements of the law of this Commonwealth. Headnotes are the "abstract of the points decided in each case" required by Code § 17.1-322. However, the authoritative statements of case law are contained in the text of opinions issued by this Court. Additionally, our decision in Lund v. Commonwealth is not pertinent to the resolution of this appeal. The defendant in Lund was indicted for violation of statutes that related to

---

[3] In Walls v. Commonwealth, 248 Va. 480, 482-83, 450 S.E.2d 363, 364-65 (1994), we discussed the admissibility of opinion testimony to establish value in a larceny prosecution.

8

larceny by false pretense. In Lund, we emphasized that the defendant was charged with certain crimes related to the use of a computer and the unauthorized use of the computer, but at that time, those acts did not constitute the crime of larceny. 217 Va. at 692, 232 S.E.2d at 748. Additionally, we held that the Commonwealth failed to establish the value of the items that were purportedly taken. Id. at 692-93, 232 S.E.2d at 748-49. In the appeal before this Court, unlike the situation in Lund, the Commonwealth established fair market value of the items taken through the testimony of Gee and Snell, and the current penal statutes prohibit the use of a computer in the commission of a felony.

DiMaio also argues that the Commonwealth failed to establish the value of the covenants not to compete and, therefore, his conviction for larceny cannot be sustained. We disagree. As we previously stated, Gee testified, without objection, that he had created a specialized form that complied with the laws of ten states when he drafted the covenants not to compete and that the market value of the form was between $5,000 and $7,000. DiMaio did not object to this testimony, and the admissibility of this testimony is not challenged in this appeal. This evidence of value is

---

The litigants in this appeal do not raise any issues regarding the admissibility of the testimony of Snell and Gee.

9

sufficient to satisfy the statutory requirement for the crime of larceny.[4]

For the foregoing reasons, we will affirm the convictions.

<u>Affirmed</u>.

---

[4] We do not consider DiMaio's argument that "in-house counsel" and the president of S&M Brands should not have been permitted to testify regarding the fair market value of the property DiMaio took.  DiMaio did not object to the admission of such testimony, and he does not challenge the circuit court's reliance on such testimony with an assignment of error.