UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, O'Brien and Malveaux
Argued at Richmond, Virginia


CIARA LASHELE WATKINS

MEMORANDUM OPINION* BY
v.      Record No. 1531-15-2       JUDGE ROBERT J. HUMPHREYS
JULY 26, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

(K. Scott Miles, on briefs), for appellant.  Appellant submitting
on briefs.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Ciara Lashele Watkins ("Watkins") appeals her conviction from the Circuit Court of the

County of Chesterfield (the "circuit court") for issuing a bad check in violation of Code

§ 18.2-181.  Watkins's single assignment of error claims that the circuit court erred in convicting

her of passing a worthless check because the check was given as payment for a past debt.

When the sufficiency of the evidence is challenged on appeal, "[t]his Court 'must

examine the evidence that supports the conviction and allow the conviction to stand unless it is

plainly wrong or without evidence to support it.'"  Commonwealth v. McNeal, 282 Va. 16, 20,

710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d

137, 139-40 (2008)).  The relevant inquiry is whether "any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."  Kelly v. Commonwealth, 41

Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (en banc) (quoting Jackson v. Virginia, 443 U.S.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

307, 319 (1979)).  This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved."  Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010).  "A factfinder's resolution of conflicting facts, as well as competing inferences, receives 'the highest degree of appellate deference.'"  Coleman v. Commonwealth, 52 Va. App. 19, 23 n.2, 660 S.E.2d 687, 689 n.2 (2008) (quoting Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006)).  To the extent this Court must interpret statutory language of Code § 18.2-181, this Court applies a *de novo* standard of review.  See Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007).

Code § 18.2-181 provides:

> Any person who, with intent to defraud, shall make or draw or utter or deliver any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, draft or order, although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check, draft, or order has a represented value of $ 200 or more, such person shall be guilty of a Class 6 felony.  In cases in which such value is less than $ 200, the person shall be guilty of a Class 1 misdemeanor.
>
> The word "*credit*" as used herein, shall be construed to mean any arrangement or understanding with the bank, trust company, or other depository for the payment of such check, draft or order.
>
> Any person making, drawing, uttering or delivering any such check, draft or order *in payment as a present consideration for goods or services* for the purposes set out in this section shall be guilty as provided herein.

(Second emphasis added).

The last paragraph of Code § 18.2-181 was added by the General Assembly in 1978 in response to the Supreme Court of Virginia's holding in Lund v. Commonwealth, 217 Va. 688,

232 S.E.2d 745 (1972), that "at common law labor or services could not be the subject of the crime of larceny because neither time nor services could be taken and carried away." Sylvestre v. Commonwealth, 10 Va. App. 253, 256, 391 S.E.2d 336, 338 (1990) (quoting Lund, 217 Va. at 692, 232 S.E.2d at 748). The "purpose of the amendment was simply to provide that bad checks given as present consideration for intangible goods or services may, assuming all other provisions of the statute are met, constitute the crime of larceny." Id. at 257, 391 S.E.2d at 339. However, "the amendment did not make it the crime of larceny to give a bad check as payment for past debts or as gifts, nor did the amendment alter or limit the scope of the first paragraph as it existed prior to 1978." Id. at 257-58, 391 S.E.2d at 339.

Watkins claims that there was an executed contract between the parties in February 2014 and that the $2,500 check dated March 21, 2014 was issued pursuant to that earlier agreement, not the executed contract of March 21, 2014. "To prove a contract's existence, all of the essential elements must be proven. '[T]here must be a complete agreement which requires acceptance of an offer, as well as valuable consideration.'" Dean v. Morris, 287 Va. 531, 536, 756 S.E.2d 430, 432-33 (2014) (quoting Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980)). Pursuant to the statute of frauds,

> a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

Code § 8.2-201(1); see also Armco, Inc. v. New Horizon Dev. Co., 229 Va. 561, 565, 331 S.E.2d 456, 459 (1985).

The record in this case contains a *proposed* contract for the sale of a 2014 Hyundai Sonata from February 26, 2014; however, it was not signed by Watkins or a representative of the dealership. Therefore, contrary to Watkins's claim, no binding contract was formed on February

26, 2014 because the February document did not comply with the statute of frauds. Further, the finance director at Gateway, Talal El Oukaili ("El Oukaili") testified that because the February document in the record was not signed, he was not certain that it represented a final agreement. Watkins also admitted that the unsigned February document admitted into evidence was different than the one she claimed to have signed on February 26, 2014. As the circuit court noted, Watkins "was not the legal owner when the car was allowed to leave with her in February." At best, Watkins was a bailee of the car. See Morris v. Hamilton, 225 Va. 372, 374, 302 S.E.2d 51, 52 (1983) ("[I]n order to establish a bailment, there must be a delivery by the bailor and an acceptance by the bailee. However, no formal contract or actual meeting of the minds is necessary.").

Later, Gateway chose to renegotiate the arrangement with Watkins on March 21, 2014, lowering the amount to be financed from $23,112.52 to $20,848. It was not until March 21, 2014 that both Watkins and El Oukaili, as a representative of Gateway, signed a contract which contained a provision expressly requiring Watkins to pay a $2,500 deposit. In accordance with that provision, Watkins placed the check for $2,500 in the overnight drop box at the dealership later that day. Thus, it was on March 21, 2014 when a binding contract for the sale of the Sonata was actually formed. The circuit court made a factual finding that the $2,500 check Watkins wrote to Gateway contemporaneously with the execution of the contract for the sale of the Sonata on March 21, 2014 was simply her performing her obligation under the newly formed contract, not paying an existing debt. Because this Court cannot say that this factual finding by the circuit court was plainly wrong or without evidence to support it, we affirm the decision of the circuit court. See McNeal, 282 Va. at 20, 710 S.E.2d at 735.

Watkins cites this Court's decision in Sylvestre for the proposition that her conviction should be reversed because the evidence "failed to exclude the hypothesis that the check was

given for a past debt." However, Watkins misrepresents the holding of Sylvestre. In Sylvestre, this Court reversed a conviction under Code § 18.2-181 because the "record contain[ed] no direct evidence of any such [fraudulent] intent on [the defendant's] part." 10 Va. App. at 258, 391 S.E.2d at 339. This Court further held that the rebuttable presumption contained in Code § 18.2-183 which provides that the issuance of a check without sufficient funds constitutes prima facie evidence of fraudulent intent when the issuer is provided "'written notice that such check, draft, or order has not been paid to the holder thereof'" did not apply because the "record contain[ed] no evidence that [the defendant] ever received such written notice." Id. (quoting Code § 18.2-183). Thus, this Court concluded that the fact that the defendant had "passed a bad check . . . , standing alone, [was] not adequate to bring the case within the ambit of Code § 18.2-181." Id. at 259, 391 S.E.2d at 340. Watkins heavily relies on the Court's statement, "[a]s the evidence did not exclude the hypothesis that the check was given for a past debt, the motion to strike should have been granted." Id. However, the Court in Sylvestre repeatedly emphasized that the Commonwealth failed to prove what goods or services the defendant had issued the check to pay for. Id. at 254-55, 257-59, 391 S.E.2d at 337, 338-40.

The facts of this case are easily distinguishable. First, while not the subject of this appeal, there is ample evidence in the record demonstrating Watkins's intent to defraud Gateway. Specifically, the statutory presumption of fraudulent intent applies given that Watkins received notice that her check was returned for insufficient funds and still failed to make payment to Gateway. See Huntt v. Commonwealth, 212 Va. 737, 739, 187 S.E.2d 183, 186 (1972) (holding that the statute creates "a rebuttable presumption of the necessary intent and knowledge if a dishonored check is not paid within five days after giving of the notice specified in the statute"). Further, Watkins admitted that she wrote the $2,500 check for the deposit knowing that there were insufficient funds in her account to cover the check, that representatives

from Gateway had repeatedly tried to contact her after the check was returned for insufficient funds, and that she lied when she had texted an employee at the dealership telling her that she had obtained a certified check to cover the cost of the deposit.  Watkins also lied to Officer Lucca when she told him she had not been contacted by Gateway regarding the returned check. Second, unlike in Sylvestre, there is no question what goods Watkins issued the check to pay for. As the circuit court noted, it is clear from the record that Watkins issued the $2,500 check on March 21, 2014 to pay for the Sonata pursuant to the signed contract with Gateway dated that same day.  Thus, Sylvestre does not require reversal in this case.

Applying the appropriate standard of review, we hold that the circuit court's factual finding that the $2,500 check Watkins wrote to Gateway contemporaneously with the execution of the March 21, 2014 contract was issued to satisfy her obligation under the newly formed contract, not to pay an existing debt, was not plainly wrong or without evidence to support it. Accordingly, we affirm the circuit court's decision.

Affirmed.